ANDREW W. JONES* *v.* Z. JAMES BELT.

*Master and Servant—Negligence—Contributory Negligence—Damages.*

The master is liable for all injurious acts to others resulting from the ignorance, unskillfulness or negligence of his servant acting within his line of duty.

Disobedience of a city ordinance in permitting a horse to stand in the street unhitched and unguarded is an act of negligence for which the employer of the driver must answer in damages to the person sustaining injuries therefrom.

In an action for damages the plaintiff cannot recover if he is in any degree guilty of negligence contributing to the injury sustained; But in order to defeat the recovery on this ground the contributory negligence of the plaintiff must be such as had a casual connection between the defendant's negligence and the injury.

A plaintiff recovering damages for injuries sustained is entitled to compensation for all expenses for medical attendance, a reasonable allowance for nursing and drugs, for loss of time and wages, for pain and mental sufferings and compensation for pecuniary loss from permanent injuries and for future suffering resulting therefrom.

*(New Castle, May, 1884.)*

THIS was an action against a master for damages for personal injuries, alleged to have been caused by the negligence of his servant while using the team of the master on the public highway.

*H. H. Ward,* for plaintiff.

*W. C. Spruance,* for defendant.

COMEGYS, C. J., charging the jury:

Gentlemen of the jury:—

It is proper that we should, before we deal with this particular case on trial before you, give you information upon the subject of the liability of masters for the misconduct of their servants—of employers for that of those they employ. For all injurious acts to others resulting from the ignorance, unskillfulness, or negligence of

---

* This case is cited several times in this book but was not published in its proper place as it was not among Judge Houston's papers. Through the kindness of H. H. Ward, Esq., of Wilmington, one of the counsel in the case and who had preserved a copy of the charge, it is published here.

persons in the service of others, those who employ them are liable, provided they were then engaged in the business of their employers. But for any wilful act of the person employed—that is, act outside, and not within the line of his duty—the employer is not liable. For example: most of you are farmers, and hire men to work for you. Having occasion to send a man with a team to market or otherwise, should he prove to be an ignorant, unskillful, or negligent driver and by reason of such unfitness for the service upon which he was sent by you, a collision with some other team or vehicle, the driver of which was not in fault at the time, should take place and damage ensue, you would be liable for such damage —upon the ground that a person who employs another to act for him as his servant or employe (using a convenient term) impliedly engages, so far as the protection of others from injury by him is concerned, that he is reasonably well qualified for such service and will do his duty therein. No man who undertakes to carry on, or transact any business (to put the matter in another form) can escape personal liability for an injury committed by a servant in the course of his employment, upon any plea that the act or omission from which the injury arose, was that of his servant merely. It may be such entirely, and yet the master will be responsible for the consequences of it to another.

Applying this law to the facts of the case we say, that the act of the servant, Frame, in leaving the defendant's horse in the street unhitched or otherwise secured, and without anyone to watch it while he went into the yard to obtain a box to be loaded into it, and was absent long enough for the horse to walk into and down Market street, was an act of negligence on the part of that servant, for which the master, the defendant here, is liable to respond in damages to the plaintiff if the facts of his case show him entitled to take advantage of such liability. It appears by an ordinance of the city (page 125 of the collection of them) that all drivers of vehicles, such as Frame was, shall, unless they have hold of the reins or lines, be sufficiently near to their horses, etc., to control

them and prevent accident, under a penalty provided by it.    This was to make the driver liable; but being a public ordinance, and, in contemplation of law, known to the citizens, and creating an offence by prescribing a penalty for doing an act, it must, in all reason, be taken as full notice to the defendant that his driver must not lose the control of horse, as it appears by the proof on both sides before you he did.    Then yon have before you to begin with, a case of the breach of the local law of the city.    The undisputed facts, indeed these shown by the defendant, are, that the driver had left his horse unhitched and unrestrained by the weight and attachment to be fastened to the bridle, which he carried in his wagon, and as he states used elsewhere, and that the animal deliberately turned the wagon in the direction of Market street, and walked off to that thoroughfare, and down it some distance before the driver discovered his departure, which even then was not until his employer had excited his attention by moving to close the yard gate. It cannot then be said that the driver was sufficiently near the horse to control him.    If he were not, and did not do it, in either case he was guilty of negligence in the performance of duty—how good soever his character as a good and careful sevant may be—and the defendant must be held liable for any consequences arising from such negligence.    And, as the maintenance of this action does not depend upon the bad character of the man or horse, the proof as to the good character of the man as a servant or of the horse as a sober, gentle horse, is not to be weighed by you against positive neglect on the part of the servant of the defendant, if you find such to have existed.    When I say to you that disobedience of a city ordinance is unquestionably, to say the least of it, inexcusable if not wilful negligence; and also that, without such ordinance, allowing a horse to be unattended in the street of a city by anyone able at the time to prevent his movements if he attempted to make any, is also such negligence; you will perceive why it is that the defendant in his action does not rest his case upon the question of diligence or absence of negligence on his part, but upon what he

conceives to be the law of this State—that in a claim for damages, say from collision, if it can be shown that the plaintiff, by his own negligence or want of care, contributed to that which caused the injury of which he complains, he cannot recover.

Pursuing further the evidence in the case, we find that the servant Frame had no knowledge that the horse had gone away from his stand, where he had been left by him, before he had traveled from Sixth street, opposite the yard door at the back of the whole premises of the defendant, out into Market street and was out of sight, until the defendant moved to close the yard gate. Then the servant found he had gone away, and went in pursuit of him. Before this, however, a colored man had gone to the defendant's store (at the northwest corner of Sixth and Market) and given information that the horse was loose and traveling down the street. When this intelligence was received, a clerk of the defendant went in pursuit also of the horse, and though he made the fastest run he could along the sidewalk (which was icy more or less) he did not get up with him until the collision happened, the consequences of which have been laid before you. As the horse by the proof on both sides walked very slow, he must have been some time at large before it was known. No effort seems to have been made by anyone to stop the horse except that the clerk when he reached Fifth street called to him to do so ; but no outcry beyond that of one or two expressions of alarm at the impending peril, one of which proceeded from the superintindent of the Arnoux Electric Light Company, a corporation doing business here whose servant at the time the plaintiff was. The horse is proved to have been proceeding down Market street on the west track of the street car road in a very leisurely manner and nobody offered to stop him, nor is there evidence that either the clerk or the servant called upon anyone to stop him. These seem to be the facts down to the period when the horse crossed Fifth street on his way down Market.

When the horse, with the wagon to which he was geared, had passed across Fifth street going down, the latter came in collision

with a ladder upon which the plaintiff stood. He was there in the couse of his employment, by and under the orders of the Arnoux Electric Light Company, replenishing one of their lamps suspended upon a cable across the street, and some 14 or 15 feet above it, supplied with others lower down the street in pursuance of a contract with parties on that street. This lamp hung over the middle of Market street a short distance below Fifth street, and was supended as the others were, from a line supported by the cable, which line was run through pulleys, for convenience of cleaning the lamps without ascending in the street to the lamp itself. The ladder on which the plaintiff stood rested upon the 4 feet space between the two street car tracks, with one of the sides of the frame very near the east rail of the west track if not over or across it. The horse seems to have been traveling down this west track, and the near wheels, or one of them, came in contact with the side of the ladder I have mentioned, and threw the ladder down with the plaintiff upon it, injuring him, as has been shown to you. Why he was upon the ladder at all, has been explained by testimony on both sides : it is that the weather had become icy and the pulleys could be used no longer. The use of a ladder to get at the lamps had therefore become necessary. The testimony of the plaintiff, as well as that of others, is that he was accompanied on that occasion, by a man (the witness Walker) to help him with his work in replenishing the lamp with carbon burners, as he had always been attended before, when using the ladder; but his attendant on the day of his injury, the 9th of January last, left his post at the ladder, and with the consent, if not by the direction of the plaintiff left the street and went into a store near by to wash the globe of the lamp which the plaintiff had removed and descending had handed to him, for the purpose of having it cleaned. During the absence of the man the plaintiff reascended the ladder and shortly afterwards the collision happened. The plaintiff, in order to show that he was guilty of no want of care on his part, states to you in his evidence, that before he ascended the ladder the first time, and after

wards after his man left him to go to clean the globe of the lamp, he looked up and down the to see if he should incur any danger from passing vehicles, chiefly street cars, but that he saw nothing to suggest any risk or danger from being upon the ladder. Upon this state of facts with reference to the plaintiff, the defendant insists, and asks us to charge you accordingly, that the plaintiff was himself guilty of negligence contributory to the collision; and should we so do, he asks us further to charge you that he cannot recover. He insists also that if we should not decide upon this point that the plaintiff was himself guilty of negligence, yet that his company had no right to use the street in any way for the display of their lights, the City Council not having been shown to have given their authority therefor; and, he further denies that the council could give any such authority. We do not feel called to pass upon this point, it being our opinion, and we so charge you, that the plaintiff, with all the right any authority or law could give his employer, was himself guilty of negligence, in not having his man at hand to protect his ladder from collision, or other casualty.

We have, therefore, before us a case of negligence on both sides, and the defendant insisting that it was contributory on the part of the plaintiff, and, therefore, according to the former rulings in this State and elsewhere, entitling him to a verdict; while the plaintiff contends that the negligence, that is, the omission which we have just mentioned to you, to have his fellow laborer at the foot of the ladder to protect him from accident, was in no sense contributory to that of the plaintiff, and therefore he is entitled to your verdict. We are thus required to pass upon this question of contributory negligence—it being the only one, as we conceive, that can in any sense affect the right to recovery by the plaintiff.

While it is unquestionably that, in many cases, where the plaintiff is guilty of negligence himself, he cannot recover against a defendant by whom he is injured through his negligence which is simultaneous as has been decided by this court in several cases, and is the law of the land; yet the negligence of the plaintiff must be

such as (to use a phrase of a very distinguished author) had a cas-
ual connection between the defendant's negligence and the injury.
Where this casual connection exists—that is, where the want of
diligence, carelessness or negligence of one man causes the injurious
act of another, guilty also of either of them—the misconduct of
the party injured is said to be contributory with that of the injur-
ing party, and no recovery can be had, the law having no means of
determining the degree of negligence chargeable to the respective
parties. This principle, or rule, therefore, applies, with peculiar
force, to the case of railroad accidents; though it has been held not
to be applicable to injuries where there is not necessarily any con-
nection between the negligence of a plaintiff and that of a defend-
ant. In cases of railroad accident, where there is negligence on
the part of a person by being improperly upon the track either in
crossing or otherwise, and he is killed or injured by the engine of
the company no recovery is alllowed, although there was also negli-
gence on the part of the company in not blowing the whistle, or
giving other warning; but this is for the reason, that the act of
the injured party was the cause of the accident, or directly con-
tributed to it; his being there, the collision was inevitable. But if
the speed of the train could have been checked or stopped so that
the party injured would have had time to escape the impending
danger, no question of contributory negligence could have been
made and allowed to defeat the action. Let us illustrate this
principle—that there must be a casual connection between the
negligence of a plaintiff and the act of a defendant. A man
is unlawfully in a certain place; he is therefore there cer-
tainly by reason of his negligence in not obeying the law and keep-
ing away to say the least. While there he is injured by the care-
lessness or negligence of another; it would be no excuse for that
other, that he was there unlawfully, unless by being there he pro-
moted, in some other way than by simply being there, the other's
wrongful act. Contrary to an ordinance of this city a man leaves
his horse and carriage or wagon standing hitched in one of the

streets for more than the time such ordinance fixes; this is not only obvious carelessness, or negligence, to say nothing of it being a breach of positive law. Whilt the horse and vehicle are there a party drives along the street carelessly and runs into it, when by turning aside, there being plenty of room for the purpose, he might have avoided damages. No one would pretend, for a moment, that the unlawful and negligent act of such party in leaving his horse where he did, would protect the defendant from an action for the injury done by by his carelessness. Again, if one were driving upon a highway, and instead of observing the law of the road, which is that he shall go to the right, chooses to do the contrary and travels on the left side of the road, it would be no excuse to another, who meeting him and finding him on the wrong side of the road should drive his horse so carelessly that as to come into contact with and injure the other's horse and carriage; he would not be protected from an action by the injured party upon the ground that the plaintiff was in the wrong place; his wrong would not be excused by that of the other. Suppose a drunken man were lying and obstructing a highway; should another, by careless driving, run over him, he would be liable, there being plenty of room to avoid him. Other illustrations are furnished by the cases read to the court by the plaintiff's counsel, as deciding (and we think rightly) that the illegality of one man's act is no palliation of the wrong done by another. The case of the jetty reported in the 59th volume of the E. C. L. Reports, at page 275, is one of those. There the plaintiff being the owner of a wharf on the river Thames and parallel with the shore, built a jetty, extending from the face of the wharf out into the stream. This he had no right to do, and his structure, or erection, was illegal. The defendant's vessels of some sort, in navigating the stream, were so carelessly managed that a collision with the jetty took place, and the defense set up that the defendant had occasion to pass over that part of the river, was held to be no answer to the action, unless it had been averred and shown, that he could not navigate the river without inconvenience. This case decides what we have stated as law applicable to

that now on trial. The other cases cited upon the same point were decided on the same principle. In a late case in Maryland which has come to my notice (44 Maryland, 117) decided in 1875, the court say, " because a plaintiff was, himself, negligent, or acting in violation of law he is not therefore, prevented from recovering damages for an injury which had resulted from the negligence of a defendant where, but for the want of ordinary care on the part of the defendant, the misfortune would not have happened." The case was one of a suit in a court below to recover for damage to the carriage and horses of the plaintiff by the fright occasioned by the fall of furniture out of a furniture wagon of the defendant resulting from negligence in loading the wagon, so that the furniture fell from it and frightened the plaintiff's horses which ran off and injured themselves and the carriage. The driver at the time was not in his seat; but some distance off, in violation of an ordinance of Baltimore ; he ran up however, and catching one of the horses by the bridle succeeding in stopping them, but not in preventing the injury. The ordinance was cited to the court, which was asked to instruct the jury that there was contributory negligence on the part of the plaintiff who was the owner of the carriage and horses, by reason of his misconduct and therefore he could not recover. But the court refused the instruction.

The court above say, page 129 : " The theory of this prayer is that had the appellee Coffey been more prompt he could have reached his horses before the load fell from the wagon and the injury complained of would not have happened. Had he reached his horses in time, it is possible he might have held his horses in check, and the injury thus sustained have been avoided. But to hold that his failure to reach them sooner than he did, constituted, in law, contributory negligence, would be disregarding the well known difference between remote and proximate cause, and would be carrying the doctrine of contributory negligence in law to an extreme not warranted by any authority."

We believe the law as cited to be the correct rule for our and your guidance and therefore say to you, that upon the facts proved,

of negligence or want of care on the part of the plaintiff with respect to this horse, resulting from the neglect of his driver in leaving him unhitched upon the street, and as the undisputed evidence shows, out of his reach or control at the time he went off, and the injury to the plaintiff occasioned by throwing down the ladder with the plaintiff who was on it by the animal passing without a driver down that street, there was such misconduct or negligence as it is called in law as entitles the plaintiff to a verdict at your hands; and that there is nothing in this case to justify us or you in holding the negligence of the plaintiff with respect to having no one at hand to protect the ladder whilst he was upon it to be contributory, in the sense of the law, upon the subject. If the horse and wagon could not have passed along the street without a collision, then the plaintiff would have been without relief on account of his negligence. But as it could have done so, there being plenty of room on both sides of the ladder, the negligence of the plaintiff is to be treated as the sole cause of the accident. If a team escape to, or get upon the highway, negligently, as in this case, from the facts shown the defendant, his did, he must take the consequences of any injury which may result therefrom.

With respect to damages the plaintiff's counsel has stated the law correctly—the plaintiff's right includes compensation for all expenses for medical attendance, a reasonable allowance for nursing and drugs, for his loss of time and wages, and for his pain and mental suffering resulting from the accident; and if, from the evidence, you believe he has received permanent injuries which will diminish his ability to earn a living, he will be entitled to recover all the pecuniary loss which he is likely to sustain by reason thereof and for his future sufferings. But you must be careful in finding for the plaintiff to confine your verdict to these—the facts of this case showing no criminal neglect, carelessness or wrong, but inexcusable negligence or carelessness merely.